UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| S. M.,<br><br>                Plaintiff,<br><br>       v.<br><br>SEQUOIA UNION HIGH SCHOOL<br>DISTRICT, et al.,<br><br>                Defendants. | Case No. 25-cv-09255-TSH<br><br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS PURSUANT TO<br>RULE 12(b)(6)**<br><br>Re: Dkt. No. 14 |

## I.    INTRODUCTION

Plaintiff S.M., a minor, brings this action against Defendants Sequoia Union High School District and Jarrett Dooley (collectively, "Defendants"), alleging that Defendants were deliberately indifferent to sex-based harassment of S.M. and discriminated against S.M. in their failure to investigate such harassment. ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). ECF No. 14 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the January 22, 2026, hearing. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[1]

## II.    BACKGROUND

### A.    Factual Background

S.M., a minor, brings this action by and through his parents and guardians, H.M. and A.M. Compl. ¶ 5 (ECF No. 1); ECF No. 11 (Order Appointing GAL). Defendant Sequoia Union High School District ("Sequoia") is a public school district that receives federal financial assistance.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

United States District Court
Northern District of California

United States District Court
Northern District of California

Compl. ¶ 6. S.M. was enrolled as a student at Sequoia at all times relevant to this action. *Id.* ¶ 16. Defendant Jarrett Dooley ("Dooley") is the Director of Student Services for Sequoia. *Id.* ¶ 7.

Overall, S.M. alleges that (1) Defendants were deliberately indifferent when S.M. experienced sex-based harassment when his "email account was hacked and used to send a sexually explicit and humiliating email" to members within the school district; (2) Defendants engaged in sex-based discrimination when they "treat[ed] male harassment victims less seriously than female victims would be treated"; and (3) Sequoia failed "to train employees on mandatory Title IX procedures." *Id.* ¶ 1.

### 1.     Incidents Of Harassment

On April 1, 2024, S.M.'s email account was hacked and used to send a "discriminatory email." *Id.* ¶ 17. "The email contained a picture of S.M. bare-chested, in a flex pose, but altered to make him look skinnier than he is, or deformed, in a bathing suit." *Id.* ¶ 19. "The email stated: 'THE PEDIFILE IS BACK!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!'" *Id.* ¶ 20. "Pedifile" is a misspelling of the word "pedophile." *Id.* ¶ 21. "The altered body photograph constitutes body-shaming and sexual humiliation. The text falsely brands [S.M.] as a sexual predator." *Id.*

"The email was directed to an extensive listserv of school-associated email accounts, including: S.M.'s parents' personal emails; Teachers; School bus drivers; Long-term substitute teachers; Family accounts; The Director of Maintenance and Operations; 'All Carlmont Students'; 'All Menlo-Atherton Students'; 'All Middle College Students'; 'All Redwood Students'; 'All Woodside Students'; and Others throughout the District community." *Id.* ¶ 18. Through this distribution, the email "was sent to virtually the entire [Sequoia] community[.]" *Id.* ¶ 22.

"As a result of [Sequoia's] failure to investigate and provide supportive measures, [S.M.] was subjected to increased ridicule and was effectively excluded from the programs and activities of [Sequoia]." *Id.* ¶ 36. In November 2024, S.M. was bullied by another student at a residential facility "related to the April 1, 2024 email incident." *Id.* ¶ 37.

Because S.M. does not know who sent the email, he "remains vulnerable to ongoing harassment." *Id.* ¶ 39. S.M. was "forced to attend educational settings other than his home

school, incurring substantial out-of-pocket expenses." *Id.* ¶ 40.  S.M.

> has suffered and continues to suffer severe emotional distress, anxiety, and mental anguish; humiliation and embarrassment from the districtwide harassment; fear and vulnerability to ongoing harassment; loss of equal access to educational opportunities and benefits; loss of social connections, extracurricular participation, and normal school experiences; economic damages from attending alternative educational settings; ongoing psychological harm from the institutional betrayal of having his complaint rejected on false grounds.

*Id.* ¶ 41.

### 2.    Activities Regarding The Incidents

Sequoia has "adopted Administrative Regulation 5145.71 ('AR 5145.71'), which sets forth [Sequoia's] Title IX Policy and procedures for responding to sexual harassment." *Id.* ¶ 9. Pursuant to AR 5145.71, when Sequoia receives a report of sexual harassment, Sequoia must discuss supportive measures with the complainant and "follow certain protocols in investigating complaints." *Id.* ¶¶ 10–15.

S.M. alleges that the following events occurred.  On April 22, 2024, S.M.'s parents notified Sequoia about the email distributed on April 1, 2024, by filing a "Uniform Complaint." *Id.* ¶ 24.  On May 9, 2024, Dooley "sent a letter to [S.M.'s] parents acknowledging receipt of the Uniform Complaint"; Dooley stated that "the email was 'sexually explicit and offensive' and that it 'manipulated a photograph of Complainant.'" *Id.* ¶¶ 26–27.  In the letter, Dooley "rejected the Uniform Complaint" and stated:

> As Complainant is no longer enrolled with the District, and was not a part of the District's program or activities at the time the email was sent, the Complaint falls outside the District's Uniform Complaint Procedure.

*Id.* ¶ 28.  This statement was false because S.M. "has always remained a student enrolled at [Sequoia]." *Id.* ¶ 29.  Sequoia "knew or should have known this fact, as enrollment status is readily verifiable through [Sequoia's] records." *Id.*  Sequoia acknowledged "that it would investigate due to 'the serious nature of the complaint,'" but it refused to investigate S.M.'s complaint *Id.* ¶ 30.  Sequoia failed to comply with multiple requirements under AR 5145.71 and did not "[c]onduct any Title IX investigation whatsoever." *Id.* ¶ 31.

3

"On September 13, 2024, [S.M.] filed a government tort claim with [Sequoia] advising that no Title IX investigation had been initiated and that [S.M.] remained a student in [Sequoia]." *Id.* ¶ 32.

"In November of 2024, [Sequoia] placed another student at the residential facility at which [S.M] was placed.  That student proceeded to bully [S.M.] related to the April 1, 2024 email incident." *Id.* ¶ 37.

"On February 10, 2025, [S.M.'s] counsel communicated with counsel for [Sequoia] again reiterating that no Title IX investigation had occurred and that [S.M.] remained a student in [Sequoia]." *Id.* ¶ 34.  As of the time this action was filed, Sequoia "has still not initiated a Title IX investigation, has not followed AR 5145.71 regulations, and has not provided supportive measures." *Id.* ¶ 35.  "As a result of [Sequoia's] failure to investigate and provide supportive measures," S.M. suffered harm.  *Id.* ¶ 36.

### 3.    Sex-Based Discrimination By Defendants

S.M. alleges that Defendants engaged in sex-based discrimination when they "treat[ed] male harassment victims less seriously than female victims would be treated." *Id.* ¶ 1.  S.M.

> lacks sufficient information at this time to form a belief as to how [Sequoia] has responded to complaints filed by or on behalf of female students but specifically identifies that this allegation is likely to have evidentiary support after a reasonable opportunity for discovery of [Sequoia's] Title IX complaint files, response times, investigation records, and comparative treatment data.

*Id.* ¶ 42.

"[Sequoia's] false assertion that [S.M.] was not enrolled constitutes pretextual reasoning masking sex-based discriminatory animus." *Id.* ¶ 43.  If Sequoia was not acting with a discriminatory motive, it would have verified S.M.'s enrollment status before refusing to investigate, provided supportive measures to S.M., and followed all internal procedures.  *Id.* ¶ 42.

S.M.

> currently lacks sufficient information to establish a pattern of differential treatment but specifically identifies that this allegation is likely to have evidentiary support after discovery of [Sequoia's] Title IX complaint records, response patterns, and disciplinary actions over the past five years.

4

*Id.* ¶ 45.  If Sequoia did not have "a pattern and practice of taking complaints more seriously and responding more promptly when filed by or on behalf of female students than male students," it would have acted on S.M.'s complaint.  *Id.*

**B.     Procedural Background**

On October 28, 2025, S.M. filed his complaint against Defendants Sequoia, Dooley (in his individual capacity), and Does 1–10, alleging four causes of action:  (1) Violation of Title IX of the Education Amendments Act of 1972 (20 U.S.C. § 1681); (2) Violation of 42 U.S.C. § 1983 (Title IX) (against Dooley); (3) Violation of 42 U.S.C. § 1983 (Equal Protection Clause) (against Dooley); and (4) Violation of 42 U.S.C. § 1983 (Failure to Train) (against Sequoia).  Compl. ¶¶ 53–112 (ECF No. 1).  S.M. seeks, *inter alia*, "an order enjoining Defendant to conduct an investigation under Title IX" and damages.  *Id.* at 26–27.

On December 18, 2025, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(6).  ECF No. 14 ("Mot.").  On January 2, 2026, S.M. filed an Opposition.  ECF No. 20 ("Opp.").  On January 9, 2026, Defendants filed a Reply.  ECF No. 21 ("Reply").

### III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*

United States District Court
Northern District of California

5

United States District Court
Northern District of California

*St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV.  DISCUSSION

Defendants move to dismiss all S.M.'s claims for failing to state a cognizable claim.  Mot. at 1.  In sum, the Court concludes that S.M. alleges cognizable claims for violation of Title IX and Section 1983 equal protection.  Therefore, dismissal of Claims 1 and 3 is not warranted.  However, the Court concludes that S.M. fails to allege cognizable claims for Section 1983 Title IX and failure to train.  Therefore, dismissal of Claims 2 and 4 is warranted.

### A.    Title IX Claim (Claim 1)

S.M. alleges that Sequoia violated Title IX when it refused to investigate the email incident

6

United States District Court
Northern District of California

and its failure "caused [S.M.] to suffer further harassment and to be vulnerable to harassment thereafter, continuing to this date." Compl. ¶¶ 32–41, 53–63. Defendants argue that the Court should dismiss S.M.'s Title IX claim (Claim 1) because the claim (1) cannot be brought against Dooley; and (2) fails to sufficiently state a claim against Sequoia. Mot. at 2. S.M. clarifies that his Title IX claim lies against Sequoia only and not against Dooley. Opp. at 6:3–6. The Court therefore construes the Title IX claim as against Sequoia only. *See* Reply at 2:13–18.

With certain exceptions not relevant here, Title IX of the Education Amendments of 1972 ("Title IX") provides that

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]

Title IX, Section 901(a) (20 U.S.C. § 1681).

Title IX provides for a private right of action against federal funding recipients, who are liable for damages for their own misconduct. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639–41 (1999). "[S]exual harassment is a form of discrimination for Title IX purposes." *Id.* at 649–50. "[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. A school district is liable for harassment by a third-party when (1) it exercises "substantial control" over the offender and (2) the harassment takes place "in a context subject to the school district's control." *Id.* at 644–45.

Here, Defendants argue that S.M.'s Title IX claim fails because the Complaint fails to plausibly allege the elements of control, severity, and deliberate indifference. Mot. at 6:11–8:19. The Court addresses each element in turn below and concludes that S.M. alleges a cognizable Title IX claim against Sequoia.

### 1.    Control

Defendants argue that the alleged conduct in the Complaint does not satisfy the

7

requirement that Sequoia "had 'substantial control.'"  Mot. at 7:1–6.

In a Title IX case predicated on harassment, the defendant is only liable if it "had substantial control over both the harasser and the context in which the harassment occurred." *Brown v. Arizona*, 82 F.4th 863, 874–75 (9th Cir. 2023) (en banc) (cleaned up).  If these two prongs are met, a school can be liable for failing to respond to a student's complaint about the conduct of a harasser.  *Id.* at 875.

"[W]hile the physical location of the harassment can be an important indicator of the school's control over the 'context' of the alleged harassment, a key consideration is whether the school has some form of disciplinary authority over the harasser in the setting in which the harassment takes place."  *Id.*  Thus, in a "context" over which the institution has substantial control, "the institution may be held liable for deliberate indifference under Title IX even though the harassment takes place off the physical property of the institution."  *Id.*

Here, the Court finds that S.M. pleads sufficient facts to plausibly allege that Sequoia had substantial control over the harasser.  S.M. alleges that the explicit email was sent to numerous Sequoia listservs, contained a misspelling, and contained a photograph that altered his body to make him look deformed.  Compl. ¶¶ 17–22.  Defendants quarrel with S.M.'s allegation that the "hacker is unknown" because in their view, it confirms the Complaint cannot show that Sequoia "had any means of disciplinary authority over the harasser."  Reply at 4:19–5:5.  But the Court must draw all reasonable inferences in S.M.'s favor.  *Iqbal*, 556 U.S. at 678.  The Court agrees with S.M. that because the hacker had access to more than eleven of Sequoia's listservs, there exists a reasonable inference that "the harasser was either a student or staff member who had access to virtually all school email addresses."  Opp. at 7:7–17.  And because the harasser misspelled words and altered an image in a humiliating way, there exists a reasonable inference that the harasser is likely a student.  In fact, Defendants seemingly make the same inference by repeatedly citing to caselaw applicable to "peer-on-peer harassment."  *See* Mot. at 6–8; Reply at 2.  The identity of the harasser is "a key consideration" because it indicates whether Sequoia had disciplinary authority over the harasser.  *Brown*, 82 F.4th at 875.  As such, because Sequoia would have substantial control over both its students and staff members, the Court must analyze the

United States District Court
Northern District of California

8

"context" prong in this light.

The Court finds that S.M. pleads sufficient facts to plausibly allege that Sequoia had substantial control over the context in which the harassment occurred.  Defendants argue that the facts alleged regarding "harassment firmly put any incident outside of [Sequoia's] control as they did not happen on school grounds or under the supervision of a school employee."  Mot. at 7:1–17.  But that is not dispositive—while these are examples illustrating control, "location is only one factor in determining the control over context." *Brown*, 82 F.4th at 878.  The question is whether the overall context surrounding the harassment, considering the plausible identity of the harasser, was within Sequoia's control. *Id.* at 875.

S.M. contends that Sequoia has substantial control over harassment that occurs through its own email system.  Opp. at 6:11–17.  Defendants complain that S.M. "fails to cite any authority holding that a school district has substantial control over their electronic communications systems."  Reply at 3:14–24.  That is unsurprising given the lack of caselaw.  However, California law and analogous caselaw shed light on the issue.  As discussed, the "discipline-related factor" is critical in assessing a school's control over context. *Brown*, 82 F.4th at 875, 878.  S.M. points out that California state law provides school districts with "authority to discipline students for harassing communications directed at another student even if those communications occurred off-'schoolsite.'"  Opp. at 7:13–17 (citing Cal. Educ. Code § 48900(r)(1), (2)(A)).  Thus, Sequoia has disciplinary authority over students who send harassing emails.

But Sequoia's control goes even further.  Recall that the offending email "was directed to an extensive listserv of school-associated email accounts."  Compl. ¶ 18.  A listserv

> is an automatic mailing list service that amounts to an e-mail discussion group.  Subscribers receive and send messages that are distributed to all others on the listserv.  Messages may be automatically posted to the listserv or filtered through the list owner (who may elect not to post messages that are off topic or inappropriate).  A listserv, unlike a newsgroup, involves one-to-many messaging, rather than the use of distributed message databases.

*Batzel v. Smith*, 333 F.3d 1018, 1021 n.2 (9th Cir. 2003) (citing Ian C. Ballon, E–Commerce and Internet Law:  Treatise with Forms, Glossary of Terms, at 30 (2001)) (cleaned up), *overruled on other grounds by Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025).  Using this

United States District Court
Northern District of California

definition, there exists a reasonable inference that Sequoia would have significant control over its own listservs, including the ability to filter offensive messages. The Fourth Circuit's opinion in *Feminist Majority Found. v. Hurley*, cited to by the Ninth Circuit with approval, is helpful on this point. *See Brown*, 82 F.4th at 876–77 (citing *Feminist Majority*, 911 F.3d 674 (4th Cir. 2018)); Opp. at 7:1–6. In *Feminist Majority*, the harassment occurred via anonymous posts on a social media platform that permitted communication within a 1.5-mile radius of the school. *Brown*, 82 F.4th at 876. As the Ninth Circuit explained, "the *Feminist Majority* court held that a university has substantial control over an off-campus context when it has the ability to take actions that would likely prevent harassment in the immediate vicinity of the campus." *Id.* at 877. The court highlighted that "the disciplinary and remedial tools" available to the school in *Feminist Majority* illustrated the control the school had over the social media platform. *Id.* at 877–78. For example, the school could have disabled access to the social media platform, "communicated to the student body that the [school] would not tolerate sexually harassing behavior," or "conducted mandatory assemblies to explain and discourage cyber bullying and sex discrimination." *Id.* at 877 (citation omitted). So too here. When an offensive email is disbursed using Sequoia's listservs, the reasonable inference is that Sequoia can manipulate or shut down the listservs, communicate to students that the email content is not acceptable, and provide training to all members of its community regarding digital sexual harassment. This shows that Sequoia has control over the context of harassment via its email listservs. Defendants' argument that it lacks control over the context surrounding the email incident because the email did not originate from a school account or on campus is unavailing. Reply at 4:1–28. S.M. alleges harm from the *distribution* of the email. Compl. ¶¶ 17–22. Thus, as in *Brown* (discussed more fully below), Sequoia has control over the "home" where the harassment took place: Sequoia's listservs and associated email accounts. *Brown*, 82 F.4th at 878.

S.M. further contends that Sequoia has substantial control over harassment occurring at a residential facility that involves another Sequoia student placed in the facility by Sequoia. Opp. at 7:18–22. Defendants respond that even where it places students at a residential facility, it lacks control over the students' actions once at the facility. Reply at 5:6–18. As an initial matter,

Defendants incorrectly assert that "the Complaint *does not* contain *any* allegations that [Sequoia] facilitated [S.M.'s] placement at the residential facility." *Id.* at 7:16–8:3 (emphasis in original). S.M. alleges Sequoia "placed another student at the residential facility at which [S.M.] *was placed*." Compl. ¶ 37 (emphasis added). This creates a reasonable inference that Sequoia "placed" both S.M. and the harasser at the residential facility. As such, this case is squarely on point with *Brown*, where the Ninth Circuit held that a university had substantial control over a student's assaults against his girlfriend in his off-campus residence because the university was required to give permission to the student to reside off-campus and could revoke that permission. *Brown*, 82 F.4th at 878. Given this, the Ninth Circuit held that the university "had control over the off-campus housing in which [the student] was living." *Id.* As in *Brown*, S.M. alleges that Sequoia determines placement at the residential facility. Compl. ¶ 37. And because Sequoia had the power to place students at the residential facility, a reasonable inference exists that Sequoia could remove students from the facility. Therefore, S.M.'s Title IX claim meets the control element at the pleadings stage.

### 2. Severity, Pervasiveness, And Impact On Education

Defendants argue that the Complaint "fails to allege harassment so severe, pervasive, and objectively offensive that it denies [S.M.] the equal access to education that Title IX is designed to protect." Mot. at 7:18–8:5. Specifically, Defendants assert that S.M.'s alleged harassment is not "severe" or "pervasive," and that it did not impact "his educational opportunities while at [Sequoia]." *Id.*; Reply at 5:19–7:9.

Under Title IX, "a plaintiff must show harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 631. "Whether gender-oriented conduct rises to the level of actionable 'harassment' thus depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Id.* at 651 (cleaned up). "Damages are not available for simple acts of teasing and name-calling among school children." *Id.* at 652. To state

United States District Court
Northern District of California

United States District Court
Northern District of California

a cognizable claim, a plaintiff must allege facts supporting a potential link between his education and the alleged misconduct. *Id.*

Here, the Court finds that S.M. pleads sufficient facts to plausibly allege that the email incident satisfies the severity and pervasiveness requirements. Defendants argue that "the singular email sent by an unknown party and the allegation that [S.M.] was bullied as a result" do not meet these elements. Mot. at 7:18–8:5. S.M. contends that a single incident can satisfy the elements. Opp. at 8:4–9:3. Defendants respond that S.M. "does not provide relevant legal authority as to *when* a court should make such a determination that a single incident is so severe as to be considered pervasive." Reply at 5:22–6:7 (emphasis in original). The Court takes Defendants' argument in two parts.

First, legal authority—including Supreme Court precedent—support S.M.'s proposition that a single incident can give rise to Title IX liability. Opp. at 8:4–9:3. In *Davis*, the Supreme Court explained that "in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have" the "systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 652–53. To be sure, the Supreme Court noted that a single incident was "unlikely" to be sufficient. *Id.* at 653. But *Davis* was twenty-five years ago and dealt with in-person harassment—it did not occur in an era where a single click of a button could disseminate a humiliating photo to an entire district. And Davis acknowledged that harassment on a "widespread level" could be actionable. *Id.* Applying this guidance, federal district and appellate courts have held that a single instance of sexual assault or sexual harassment may be actionable under Title IX. *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1297–99 (11th Cir. 2007); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172–73 (1st Cir. 2007), *rev'd on other grounds by* 555 U.S. 246 (2009); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 270 (E.D.N.Y. 2009). Therefore, the Court is not aware of any authority foreclosing the possibility that a single incident of sexual harassment satisfies the *Davis* standard.

Second, there is ample support for S.M.'s assertion that the alleged email incident can

12

satisfy the severity and pervasiveness elements. Opp. at 9:4–10:6. Defendants attempt to classify the email incident as mere "teasing" or "name calling" that falls outside Title IX's ambit. Mot. at 7:28–8:5 (citing *Davis*, 526 U.S. at 652). It strains credulity that an explicit image of a minor, containing language indicating that the minor is a sexual predator, that is distributed to all students, faculty, and parents within a school district, is tantamount to simple teasing. *See* Opp. at 9:6–12. Indeed, S.M. alleges that Sequoia's own agent conceded the incident's offensiveness. *Id.* at 9:9–12 (citing Compl. ¶ 27). Beyond this allegation, analogous caselaw and statutory schemes, along with agency guidance, compel the conclusion that S.M.'s allegations are sufficient on a motion to dismiss.

While there is a dearth of caselaw addressing digital sexual harassment, some cases are illuminating. *Davis* instructs courts to "bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable for adults." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (citation omitted). Common sense dictates that distributing humiliating photos is inappropriate, even for schoolchildren. In fact, courts have held that this behavior—even on a single occasion—can give rise to severe or pervasive harassment when experienced by adults. In *Carranza v. City of Los Angeles*, a California appellate court analyzed whether the distribution of a sexualized humiliating picture constitutes severe and pervasive conduct under FEHA,[2] a state statute that employs the same severity standard as that in Title IX. 111 Cal. App. 5th at 403–06. In *Carranza*, employees at the plaintiff's workplace circulated a "nude look-alike photo" of the plaintiff meant to "harass, intimidate, and slander" the plaintiff; the offending photo was "widely shared" around the plaintiff's workplace. *Id.* at 393, 403–04. The *Carranza* court held that the plaintiff's "knowledge of the widespread circulation of a sexualized nude image purporting to depict her, along with crude, objectifying commentary" was sufficiently severe or pervasive to create a hostile work environment. *Id.* at 403–405. In other words, a widely circulated intimate image resembling an

---

[2] FEHA refers to California's Fair Employment and Housing Act, which prohibits sexual harassment in the workplace. *Carranza v. City of Los Angeles*, 111 Cal. App. 5th 388, 393, 400 (2025) (citing Cal. Gov't Code § 12940(j)(1)).

United States District Court
Northern District of California

adult is sufficient to "disrupt [the adult's] emotional tranquility in the workplace." *Id.* at 405. *A fortiori*, a widely circulated intimate image displaying a child's actual face surely can constitute severe and pervasive harassment. *See* Compl. ¶¶ 5, 17–22; *Davis*, 526 U.S. at 651 (directing courts to consider the age of the victim and the number of individuals involved).

Moreover, as S.M. points out, Title VII is instructive. Opp. at 8:4–15; *see Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) (citation omitted) ("The Supreme Court has often looked to its Title VII interpretations of discrimination in illuminating Title IX."). Under Title VII's similar severity element, courts analyze the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance" and the "effect on the employee's psychological well-being" to determine whether the element is satisfied. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Court has little doubt that in applying the Title VII standard, S.M. plausibly alleges severe and persistent harassment through the dissemination of a humiliating, intimate photo and accusation of being a sexual predator, and S.M.'s resulting psychological harm and complete withdrawal from Sequoia. *See* Compl. ¶¶ 17–22, 36–41.

Further, the Office of Civil Rights ("OCR") issued guidance explaining that actionable online harassment can include "[n]onconsensual texting, posting, or otherwise sharing naked or intimate images of a person—whether real, altered, or created through artificial intelligence (AI) technologies." *Online or Digital Sexual Harassment under the 2020 Title IX Regulations: A Resource for Students, Families, and Educators*, U.S. Dep't Educ., OCR (Jan. 2025)[3]; *see* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 FR 33474-01, 2024 WL 1833438, at 33515 (U.S. Dep't Educ. 2024) (same). Such is the case here where S.M. alleges that his email was hacked and used to distribute an intimate altered image of himself without his consent. Compl. ¶¶ 17–21.

_____

[3] *Available at* https://www.ed.gov/media/document/digital-sexual-harassment-under-2020-title-ix-regulations-109318.pdf.

Defendants take issue with S.M.'s assertion that "pervasive" harassment need not occur throughout time. Reply at 6:8–7:9; *see* Opp. at 8:21–9:3. However, S.M.'s assertion that "pervasive" can refer to an incident of harassment that is "widespread in scope" is supported by the word's plain meaning. Opp. at 8:21–9:3; *see Pervasive*, Merriam-Webster Dictionary ("existing in or spreading through every part of something")[4]; *Pervasive*, Oxford English Dictionary (last rev. 2005) ("Having the quality or power of pervading; penetrative, permeative; ubiquitous.").[5] And as discussed, federal courts have held that a single incident in time can be "pervasive." *See, e.g., T.Z.*, 634 F. Supp. 2d at 270 (holding that under Title IX, "a one-time assault may be pervasive"). Therefore, the Court agrees with S.M. that he sufficiently alleges pervasive harassment "through breadth of distribution" of the explicit email. Opp. at 9:13–18.

Finally, the Court finds that S.M. pleads sufficient facts to plausibly allege that the harassment he endured satisfies the requirement that it deprived him of educational opportunities. Defendants' assertion that "[S.M.'s] Complaint does not contain any allegations supporting that the single instance of alleged harassment . . . impacted his educational opportunities while at [Sequoia]" is disingenuous. Reply at 6:15–24. S.M. alleges that he was bullied about the email incident and was subjected to increased ridicule. Opp. at 9:21–10:6, 12:3–8 (citing Compl. ¶¶ 36–37). Defendants' assertion that the Complaint does not allege "bullying or further verbal harassment while at school" is thus not only incorrect, but its focus is too narrow. Reply at 6:16–19. The Court agrees with other courts that "[e]ven a single incident of sexual harassment, if sufficiently severe, can inflict serious lasting harms on the victim—physical, psychological, emotional, and social." *Fairfax*, 1 F.4th at 274. Like the plaintiff in *Ray v. Antioch Unified Sch. Dist.*, S.M. alleges that his emotional state negatively affects his ability to receive an education. *See* Compl. ¶ 41 (alleging S.M. suffers "severe emotional distress, anxiety, and mental anguish," and "ongoing psychological harm"); *cf. Ray*, 107 F. Supp. 2d 1165, 1171 (N.D. Cal. 2000) ("Accepting the allegations regarding Plaintiff's emotional state as true, the Court finds it possible

[4] *Available at* https://www.merriam-webster. .com/dictionary/pervasive.

[5] *Available at* https://www.oed.com/dictionary/pervasive.

United States District Court
Northern District of California

that Plaintiff has suffered, and possibly continues to suffer, concrete, negative effects on his ability to receive an education."). And unlike the plaintiff in *Grabowski*, S.M. alleges that he was forced to attend another school as a result of the harassment. *See* Compl. ¶ 40; *contra Grabowski*, 69 F.4th at 1120 (finding plaintiff failed "to provide a potential link between the quality of Plaintiff's education and the alleged harassment" where, *inter alia*, the plaintiff did not "allege that he stopped attending team practices or team-sponsored events because of the bullying") (cleaned up). Collectively, S.M.'s allegations meet his burden at the pleadings stage.

In sum, the email incident, if proved, could amount to severe and pervasive conduct that was objectively offensive under Title IX and that deprived S.M. of educational opportunities. Therefore, S.M.'s Title IX claim meets the severity and pervasiveness elements at the pleadings stage.

### 3.    Deliberate Indifference

Defendants argue that the facts in the Complaint "do not rise to the level of deliberate indifference required on the part of [Sequoia] to establish Title IX liability." Mot. at 8:6–19. S.M. contends that he establishes deliberate indifference because, *inter alia*, "[r]efusing to investigate sexual harassment based on a false premise is *per se* unreasonable." Opp. at 10:7–12:2.

"Deliberate indifference" occurs "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "[D]eliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 645 (cleaned up). "[A] Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). On a motion to dismiss, courts are permitted to "identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. But "[d]eliberate indifference will often be a fact-laden question, for which bright lines are ill-suited." *Roe v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1035 (E.D. Cal. 2009) (cleaned up).

Here, the Court finds that S.M. pleads sufficient facts to plausibly allege that Dooley's lack of response amounts to deliberate indifference. S.M. alleges that after his parents notified Dooley

United States District Court
Northern District of California

United States District Court
Northern District of California

of the email incident, Dooley refused to investigate, even though Dooley stated that the email was "sexually explicit and offensive," because Dooley falsely asserted that S.M. was not a Sequoia student. Compl. ¶¶ 24–29. The Court cannot say that Dooley's response was not clearly unreasonable as a matter of law. Indeed, "an official decision by the [federal funding] recipient not to remedy the violation," through the action of "an official who is advised of a Title IX violation" yet "refuses to take action to bring the recipient into compliance," constitutes deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *see also Grabowski*, 69 F.4th at 1120–21 (finding deliberate indifference met where plaintiff "alleged that Defendants took no meaningful action in response to his complaints of anti-gay bullying"). And because Dooley had authority to initiate a Title IX investigation but did not, Sequoia can be held liable for Dooley's failure. *See* Compl. ¶ 7; *Fitzgerald*, 555 U.S. at 257. Moreover, S.M.'s allegations that he was "subjected to increased ridicule" and bullied by another Sequoia student about the email incident satisfy the causation element of deliberate indifference. Opp. at 12:3–8 (citing Compl. ¶¶ 36–40); *see Myles v. W. Contra Costa Unified Sch. Dist.*, No. 23-cv-01369-AGT, 2024 WL 1354440, at *6 (N.D. Cal. Mar. 28, 2024) (describing liability "when the school exhibits deliberate indifference after the attack which causes the student to endure additional harassment") (citation omitted). Therefore, S.M.'s Title IX claim meets the deliberate indifference element at the pleadings stage.

Accordingly, the Court **DENIES** Defendants' motion to dismiss S.M.'s Title IX claim against Sequoia (Claim 1).

**B.      Section 1983 Claims**

S.M. brings three claims under Section 1983 (Claims 2–4). *See* Compl. ¶¶ 64–112. Defendants move to dismiss all claims. Mot. at 2.

In relevant part, the Civil Rights Act provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a

17

method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (cleaned up). "To state a claim under § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

### 1.    Violation Of Title IX (Claim 2)

Defendants argue that the Court should dismiss S.M.'s Section 1983 claim for violating Title IX (Claim 2) because the claim cannot be brought against Dooley.  Mot. at 2.

"Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald*, 555 U.S. at 257 (cleaned up). Whether an individual may be held liable under Section 1983 for violating Title IX is an open question in the Ninth Circuit.  *See Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1449 (9th Cir. 1995) (declining to reach issue of whether the individual defendant "can be sued for a Title IX violation using section 1983").

Here, S.M. "concedes that dismissal of the second cause of action is appropriate given the third cause of action raises the issue of constitutional deprivation." Opp. at 13:3–8.  Further, S.M. "concedes that Title IX does not permit individual liability." *Id.* at 6:3.  The Court agrees with Defendants that dismissal is appropriate. *See* Reply at 9:20–26.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss S.M.'s Section 1983 claim for violation of Title IX against Dooley (Claim 2).  As S.M. concedes that dismissal is warranted, the Court **DENIES** S.M. leave to amend this claim.

### 2.    Violation Of Equal Protection Clause (Claim 3)

Defendants argue that the Court should dismiss S.M.'s Section 1983 claim for violating the Equal Protection Clause (Claim 3) because (1) the claim cannot be brought against Dooley; and (2) alternatively, the claim fails to sufficiently state a claim against Dooley.  Mot. at 2.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution commands that no State shall "deny to any person within its jurisdiction the equal

United States District Court
Northern District of California

18

protection of the laws." U.S. Const., amend. XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

"The Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities." *Fitzgerald*, 555 U.S. at 257.

### a.    Eleventh Amendment Immunity

Defendants argue that Dooley is not a proper defendant because he "is immune from liability under the Eleventh Amendment." Mot. at 14:11–16:15. S.M. contends that "Dooley is not entitled to Eleventh Amendment immunity for individual-capacity claims based on his own wrongful conduct—making a false statement about enrollment to avoid Title IX obligations." Opp. at 2:15–17.

The Eleventh Amendment to the United States Constitution states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., amend. XI. Broadly, the Eleventh Amendment is a jurisdictional bar to "federal jurisdiction over suits against unconsenting States." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). This bar extends to state officials sued in their official capacity for damages; thus, a Section 1983 damages suit cannot be maintained against a state official sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining individuals in official-capacity action may claim Eleventh Amendment immunity); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding state officials sued in their official capacities are not "persons" under § 1983 damages suits). However, the jurisdictional bar does not extend to state officials sued in their official capacity for injunctive relief. *Will*, 491 U.S. at 71 n.10. Nor does it preclude suit against a state official in their personal capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("The Eleventh Amendment does not bar such suits [against 'state officials, sued in their individual capacities']."). As such, the Eleventh Amendment does not bar a Section 1983 suit for

United States District Court
Northern District of California

damages against a state official who is not sued in their official capacity. *See id.* at 30–31 ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.").

Here, because S.M. brings his Section 1983 equal protection claim against Dooley for damages, the dispositive issue is whether Dooley is sued in his official or personal capacity. Defendants argue that although S.M. claims "that Dooley is being sued in his individual capacity," the "facts alleged in the Complaint reflect otherwise." Mot. at 14:1–15:11. S.M. contends that "the Complaint clearly alleges Dooley is 'sued in his individual capacity' (Compl. ¶ 7) and seeks to hold him personally liable for his own wrongful conduct." Opp. at 18:6–19:18. S.M. has the better argument.

First, Defendants' assertion that a state official cannot be sued personally for "acting within the course and scope of his employment" misapplies the law. Mot. at 15:12–28. "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer*, 502 U.S. at 26. Simply put, state officers are not "absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id.* at 31. Therefore, the "fact that Dooley was acting within the scope of his employment does not convert an individual-capacity suit into an official-capacity suit." Opp. at 19:15–18. Moreover, Defendants' reliance on *Will* for the proposition that S.M. cannot "circumvent congressional intent by a mere pleading device" is misplaced. Mot. at 11:28–15:11 (citing *Will*, 491 U.S. at 71). *Will* analyzed whether a state official could be sued in their official capacity for damages—the Supreme Court held that a plaintiff cannot use a "mere pleading device" to obtain damages from the state by suing a state officer in their official capacity. *Will*, 491 U.S. at 70–71, n.10. In other words, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (citation omitted). But here, there is no problem because S.M. seeks damages against Dooley in his individual capacity, not in his official capacity.

Second, contrary to Defendants' assertion, S.M.'s claim against Dooley satisfies the pleading standard for an individual-capacity suit. Reply at 15:15–25. "On the merits, to establish

*personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166 (emphasis in original). S.M. alleges that Dooley, while acting as Sequoia's Director of Student Services, deprived S.M. of his right to equal protection under the law by falsely asserting that S.M. was not a student at Sequoia and using this falsity to justify refusing to investigate S.M.'s complaint of sexual harassment. Compl. ¶¶ 24–31; *see* Opp. at 19:3–18. S.M. needs "to allege nothing more to avoid the Eleventh Amendment's shield." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999).

Finally, the nature of the proceedings is a salient factor in determining the capacity in which a defendant is sued. *Graham*, 473 U.S. at 167 n.14. The Ninth Circuit presumes "that officials necessarily are sued in their personal capacities where those officials are named in a complaint" and the plaintiff seeks damages against the official. *Romano*, 169 F.3d at 1185–86. Such is the case here where S.M. not only names Dooley in his individual capacity but also seeks only damages, and not injunctive relief, for his Equal Protection claim. Compl. at 27. The Court thus presumes that Dooley is sued in his personal capacity. Defendants' reliance on *McAllister v. Los Angeles Unified Sch. Dist.* does not compel a different conclusion. Mot. at 15:2–15 (citing 216 Cal. App. 4th 1198 (2013)). In *McAllister*, "the caption of the complaint g[ave] no indication that [the defendant] was being sued as an individual," nor did the complaint's body indicate that the defendant was sued as an individual. 216 Cal. App. 4th at 1208–10. In contrast—as acknowledged by Defendants—here "the Complaint caption identifies Dooley as 'an individual' and identifies that Dooley is being 'sued in his individual capacity.'" Mot. at 15:21–23 (citing Compl. ¶ 7). As such, *McAllister* is inapposite. Therefore, S.M. plausibly alleges an individual-capacity claim against Dooley at the pleadings stage.

Accordingly, because S.M. brings his claim against Dooley in Dooley's personal capacity, the Eleventh Amendment does not bar S.M.'s claim against Dooley.

### b.    Sufficiency Of Claim

S.M. alleges that his rights were violated under the Equal Protection clause when Dooley discriminated against him "on the basis of his sex in responding to sexual harassment directed at [S.M.]." Compl. ¶¶ 42–45, 80–96. Defendants argue that the claim fails "to allege any

United States District Court
Northern District of California

nonconclusory facts supporting discrimination of [S.M.] on the basis of sex." Mot. at 9:19–11:2.

Section 1983 suits based on the Equal Protection Clause are "available to plaintiffs alleging unconstitutional gender discrimination in schools." *Fitzgerald*, 555 U.S. at 258. Thus, Title IX allows "for parallel and concurrent § 1983 claims." *Id.* at 259. To establish a § 1983 equal protection violation, a plaintiff must show that the defendant, acting under color of state law, discriminated against the plaintiff as a member of an identifiable class and that the discrimination was intentional. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Sex is a protected class under the Equal Protection Clause. *Craig v. Boren*, 429 U.S. 190, 197 (1976).

Here, the Court concludes that S.M. alleges a cognizable Section 1983 equal protection claim against Dooley. Defendants argue that S.M. fails to plausibly allege that he experienced discrimination because he was a male who filed a sexual harassment complaint. Mot. at 10:12–11:2; Reply at 10:1–12:11. Not so. To establish an unconstitutional motive, a plaintiff "must show either that the defendants intentionally discriminated or acted with deliberate indifference." *Flores*, 324 F.3d at 1135; *see also Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. 23-55233, 2024 WL 719049, at \*2 (9th Cir. Feb. 22, 2024) (" [Plaintiff] can show an unconstitutional motive by showing [defendant] intentionally discriminated or acted with deliberate indifference.") (cleaned up). As discussed, S.M. plausibly alleges that Dooley acted with deliberate indifference in refusing to investigate the email incident. This is sufficient to raise an inference that Dooley acted with an unconstitutional motive. *Cf. Flores*, 324 F.3d at 1136 (holding improper motive established where defendant's "failure to take any steps to investigate and stop the harassment would support a finding of deliberate indifference").

Defendants' argument that the claim fails because the Complaint alleges only "conclusory facts indicating that Dooley treated [S.M.'s] complaint of harassment differently than harassment of any other kind" is unpersuasive. Mot. at 10:3–11. The Court agrees with S.M. that the "Complaint alleges sufficient facts to support a reasonable expectation that discovery will reveal evidence of discriminatory treatment." Opp. at 14:12–15:8. First, Defendants cite no authority for their proposition that S.M. must somehow proffer evidence of how Defendants handled Title IX

22

United States District Court
Northern District of California

complaints. *See* Reply at 12:8–11 ("[T]he Complaint admits on multiple occasions that [S.M.] lacks any information about [Sequoia's] handling of complaints other than [S.M.'s].").  S.M. alleges that there is a "reasonable expectation that discovery will reveal evidence of discriminatory treatment."  Opp. at 14:12–15:8 (citing Compl. ¶ 42).  Along with S.M.'s allegations of pretext, this is sufficient at the pleadings stage, especially where the records "showing how [Sequoia] treated female complainants" are "in [Sequoia's] exclusive possession."  *Id.* at 14:12–16; *see Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th Cir. 2025) ("And the fact that defendants may have exclusive control and possession of critical facts—like their own product inventory—cannot categorically prevent plaintiffs from stating a plausible claim.").  Second, S.M. alleges that Dooley relied on a false assertion to justify his refusal to investigate S.M.'s complaint, continued to refuse to investigate even after being corrected on two occasions, and failed to follow Sequoia's internal procedures for handling complaints of sexual harassment.  Compl. ¶¶ 28–35, 87–90; *see* Opp. at 14:4–11, 15:5–8.  As in *Flores*, S.M. alleges that Sequoia failed to enforce its own anti-harassment policies to prevent harm to S.M., despite Sequoia's knowledge that S.M. experienced sexual harassment.  *Cf. Flores*, 324 F.3d at 1135.  Therefore, S.M. plausibly alleges facts sufficient to raise an inference at the pleadings stage that he was treated differently because of his sex.

Accordingly, the Court **DENIES** Defendants' motion to dismiss S.M.'s Section 1983 claim for violating the Equal Protection Clause against Dooley (Claim 3).

### 3. Failure To Train (Claim 4)

Defendants argue that the Court should dismiss S.M.'s Section 1983 claim for Failure to Train (Claim 4) because (1) the claim cannot be brought against Sequoia; and (2) alternatively, the claim fails to sufficiently state a claim against Sequoia.  Mot. at 2.  S.M. contends that (1) the claim is properly brought against Sequoia for prospective relief; and (2) the Complaint adequately alleges a training failure.  Opp. at 16:1–18:5.

Eleventh Amendment immunity "extends not just to suits in which the state itself is a named party but also to those against an 'arm of the state.'"  *Kohn v. State Bar of California*, 87 F.4th 1021, 1026 (9th Cir. 2023) (en banc) (cleaned up).  But local government units "are not

23

considered part of the State for Eleventh Amendment purposes." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.54 (1978). Accordingly, only local government units, not state entities, are "persons" for purposes of Section 1983. *Will*, 491 U.S. at 62–64; *see Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990) (explaining that a state "entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983").

Here, Defendants argue that the claim against Sequoia fails entirely because Sequoia is not a "person" within Section 1983 given its Eleventh Amendment immunity. Mot. at 11:3–26. Defendants are correct. To be sure, a school district may be considered a "person" within Section 1983. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). However, *California* school districts are not—they are considered state agencies protected by the Eleventh Amendment. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992); *see L.T. v. Eleanor Murray Fallon Middle Sch.*, No. 24-cv-00110-TSH, 2024 WL 3678014, at *4 (N.D. Cal. Aug. 5, 2024) ("[I]t is well settled that school districts in California are 'arms of the State' for Eleventh Amendment purposes and are therefore not 'persons' within the meaning of § 1983."). Indeed, the parties agree that school districts are considered arms of the state for Eleventh Amendment purposes. Mot. at 11:19–22; Opp. at 16:6–8. Therefore, the Eleventh Amendment shields Sequoia from Section 1983 liability.

S.M. contends that "[e]ven if damages against [Sequoia] are unavailable under Section 1983, the claim should proceed for injunctive relief." Opp. at 16:1–18 (citing *Ex parte Young*, 209 U.S. 123 (1908)). True, under the *Ex parte Young* doctrine, a federal court may enjoin a state official from violating federal law. 209 U.S. at 155. Thus, unlike suit against a state itself, the Eleventh Amendment does not bar suit against a state officer where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). But here, S.M. names only Sequoia in his Failure to Train claim, not an individual in their official capacity. *See* Compl. ¶¶ 97–112. S.M. cannot maintain suit directly against Sequoia, even one that only seeks injunctive relief. *See Graham*, 473 U.S. at 167 n.14 ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in

its own name regardless of the relief sought."). Therefore, to the extent S.M. seeks to allege a claim for injunctive relief against individual Sequoia employees in their official capacities, such a claim would not be subject to dismissal on the ground that they are not "persons" under § 1983. *Will*, 491 U.S. at 71 n.10.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss S.M.'s Section 1983 claim for Failure to Train against Sequoia (Claim 4) **WITH LEAVE TO AMEND** to the extent S.M. seeks to bring this claim against individual defendants in their official capacity.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. S.M. may file an amended complaint by February 19, 2026.

**IT IS SO ORDERED.**

Dated: January 20, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

25